IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JACOB GIDDINGS, <br><br> *Plaintiff,* <br><br> v. <br><br> CITY OF PHILADELPHIA et al., <br><br> *Defendants.* | CIVIL ACTION <br> NO. 21-4206 |

**PAPPERT, J.**                                                                                              May 17, 2022

## MEMORANDUM

Jacob Giddings sued the City of Philadelphia and Philadelphia Police Officer Tyree Burnett over a vehicle stop during which Giddings claims Burnett assaulted him and violated his Fourth Amendment rights. The City moved to dismiss Giddings's claims against it, and the Court denies the motion.

I

A

Giddings alleges that in the evening of March 24, 2021, Burnett used excessive force against him and searched and seized his cellphone without permission during a vehicle stop at a Philadelphia gas station. According to Giddings, Burnett without explanation tried to pull him out of his truck and threatened to tase and pepper spray him. *See* (Am. Compl. ¶¶ 71–147, ECF 5). Giddings also claims Burnett attempted to destroy his cellphone by driving over it and then accessed the phone in an effort to delete a recording of the encounter. *See id.*

1

Giddings contends the City is responsible for Burnett's conduct. In particular, he asserts—with pervasive citations to roughly 650 pages of supporting documents[1]—that the Philadelphia Police Department has a "long history" of failing to train officers for "work with the public" and hold accountable those who violate the PPD's procedures or citizens' constitutional rights. (Am. Compl. ¶ 7.) The PPD has had notice of its training and disciplinary problems "for decades." (*Id.* at ¶ 12.)

With respect to the PPD's failure to train, Giddings asserts it knows its officers are "ill-equipped to handle encounters with the public" because the training it provides is "deficient and leads to officer misconduct," which often results in the deprivation of constitutional rights. (*Id.* at ¶¶ 9–10.) While the PPD recognizes the issues with its training, it has "done little" to make improvements so that officers know the "proper course of action" in situations like vehicle stops. (*Id.* at ¶ 70.)

Specifically, Giddings asserts the City failed to provide training that was "systematic" and "modular" to ensure "training consistency" as to uses of force, "real-world de-escalation training," "reality based training across all disciplines," "meaningful in-service training in problem areas or new areas of law" and "in-service defensive tactics training," as well as adequate training in "threat perception," "decision

---

[1] Although a district court deciding a motion to dismiss ordinarily "may not consider matters extraneous to the pleadings," documents "integral to or explicitly relied upon in the complaint" can be considered without "converting the motion to dismiss into one for summary judgment." *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) and *Doe v. Univ. of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020)); *see also Mayer v. Belichik*, 605 F.3d 223, 230 (3d Cir. 2010) (court can consider "exhibits attached to the complaint" and "undisputedly authentic documents" if plaintiff's claims are based on them). The Court considers Giddings's attachments to the extent they meet these standards.

making" and "de-escalation," and failed to maintain a "field training position" allowing for "effective training after an officer completed the Academy." (*Id.* at ¶ 211i-q.)

As for the PPD's failure to discipline officers, Giddings contends it knows its disciplinary system is "so deficient and ineffectual" that it leads officers to "disregard discipline as nothing more than an occasional inconvenience," which results in behavior that violates constitutional rights. (*Id.* at ¶ 11.) The PPD has not implemented reforms to "hold officers meaningfully accountable" in the decades it has known of its "inadequate disciplinary process." (*Id.* at ¶ 42.)

In particular, Giddings asserts the City unreasonably "delayed disciplinary processes," failed to maintain a "consistent disciplinary system with similar results for similar offenses," permitted 76% of officers to receive training and counseling in lieu of discipline following violations and 86% of cases to not advance past the "initial investigation phase," allowed officers with "multiple disciplinary issues" to stay in their positions, provided "wholly inadequate discipline" in the rare cases officers were purportedly held accountable, failed to charge officers with "all available counts" and took action on only 0.5% of complaints. (*Id.* at ¶ 183a-h.)

B

On July 7, 2021, Giddings sued the City and Burnett in the Philadelphia County Court of Common Pleas. (Not. of Removal, Ex. A, ECF 1-1.) Defendants timely removed the case to this Court pursuant to 28 U.S.C. § 1331. (Not. of Removal, ECF 1.)

On October 1, 2021, the City moved to dismiss Giddings's claims against it. (ECF 3.) Giddings subsequently filed an Amended Complaint that in Counts III and IV asserts against the City (and Burnett) Fourth Amendment claims for excessive force

3

and unlawful search and seizure and seeks municipal liability under § 1983 for the City's failure to train and discipline its police officers. (ECF 5.)

II

To avoid dismissal for failure to state a claim, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded permit a court to make the "reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 265 (3d Cir. 2021) (complaint "need not be detailed" to survive a motion under Federal Rule of Civil Procedure 12(b)(6)). If the "well-pleaded facts" do not allow the court to "infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When factual allegations are well-pleaded, the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). But this presumption applies only to allegations supported by "sufficient 'factual matter' to render them 'plausible on [their] face.'" *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). While a court disregards a complaint's "legal conclusions," it assumes "all remaining factual allegations" are true, construes them in the "light most favorable to the plaintiff" and draws "all reasonable inferences from them." *Connelly*, 809 F.3d at

790. Determining plausibility is a "context-specific task" requiring the court to use its "judicial experience and common sense." *Schuchardt*, 839 F.3d at 347 (internal quotation marks omitted).

## III

### A

#### 1

A municipality is not subject to *respondeat superior* liability under § 1983 and must "itself" cause the alleged constitutional violation. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). But it is a "person" within the meaning of that statute who can be sued when an employee's "execution" of an "official policy" or custom "inflicts" the constitutional injury. *See Monell*, 436 U.S. at 690, 694.

Municipalities also can face § 1983 liability for constitutional violations resulting from a failure to train police officers when it constitutes "deliberate indifference" to people's rights. *Harris*, 489 U.S. at 387–89; *see also Bd. of Cnty. Commr's of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997) (deliberate indifference requires "proof that a municipal actor disregarded a known or obvious consequence" of her action); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (municipal liability under § 1983 attaches only when a policymaker makes a "deliberate choice to follow a course of action" from "various alternatives").[2]

---

[2] A policymaker has "final, unreviewable discretion to make a decision or take an action," and those decisions or actions "constrain the discretion of subordinates." *Watson v. Abington Twp.*, 478 F.3d 144, 156 (3d Cir. 2007) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1481 (3d Cir. 1990)); *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

To establish deliberate indifference, a plaintiff must show (1) "municipal policymakers know that [officers] will confront a particular situation," (2) the situation "involves a difficult choice or a history of employees mishandling" and (3) an officer's wrong choice will "frequently cause deprivation of constitutional rights." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)). The plaintiff need not, however, demonstrate an unconstitutional policy or custom because the policy-or-custom and failure-or-inadequacy theories of liability are "distinct." *Forrest v. Parry*, 930 F.3d 93, 105–06 (3d Cir. 2019).

Although a plaintiff asserting a failure-to-train claim "[o]rdinarily" must identify a "pattern of similar constitutional violations by untrained employees" that "puts municipal decisionmakers on notice that a new [training] program is necessary," a single incident is sufficient if the plaintiff shows the alleged training failure would "likely" result in constitutional violations and the need to remedy it was "so obvious." *Johnson v. City of Phila.*, 975 F.3d 394, 403 (3d Cir. 2020) (quoting, *inter alia*, *Connick v. Thompson*, 563 U.S. 51, 62 (2011)); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014). The "likelihood that the situation will recur" and "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights" may warrant finding that a policymaker's failure to train the officer amounted to deliberate indifference to the "obvious consequence" of constitutional violations. *Brown*, 520 U.S. at 409.

Additionally, the training shortcoming must be "closely related" to and have "actually caused" the alleged constitutional violation. *Harris*, 489 U.S. at 390–91 (focus

6

for failure-to-train claims is "adequacy of the training program in relation to the tasks" officer performs); *Beck v. City of Pittsburgh*, 89 F.3d 966, 972 (3d Cir. 1996); *see also Brown*, 520 U.S. at 409–10 ("high degree of predictability" can support finding of causation). An alleged failure to train or discipline are interpreted the same way because they "fall under the same species of municipal liability," namely when a municipality's inadequacy "reflects a deliberate or conscious choice." *Estate of Roman*, 914 F.3d at 799 n.7; *Forrest*, 930 F.3d at 105 (internal quotation marks omitted).

B

In Counts III and IV of his Amended Complaint, Giddings seeks to hold the City liable for Burnett's violation of his Fourth Amendment rights. (Am. Compl. ¶¶ 164–212.) The City argues Giddings does not allege sufficient facts regarding an unconstitutional policy or custom or a policymaker's conduct, and that his failure-to-train and failure-to-discipline claims fail because he does not plead prior instances of misconduct by the PPD.[3] (Mot. to Dismiss 7–14, ECF 7.)

1

Giddings has at this early stage of the case adequately alleged the City's failure to train police officers amounted to deliberate indifference. *See Harris*, 489 U.S. at 387–89. Specifically, his allegations demonstrate the City knows officers will make routine traffic stops like the one leading to Burnett's alleged violent confrontation with Giddings; that such situations involve difficult choices such as when, if at all, to use

---

[3]   For municipal liability to attach under § 1983, an employee of the municipality must have committed an underlying constitutional violation. *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) ("there can be no derivative municipal claim" without a "violation in the first place"). The City does not at this point argue that Burnett did not violate Giddings's Fourth Amendment rights.

force and how much if so; and that an officer's incorrect choice will frequently cause constitutional violations, like Burnett's alleged use of excessive force against Giddings. *See Estate of Roman*, 914 F.3d at 798; *e.g.*, *Widmaier v. City of Newark*, No. 16-2533, 2019 WL 1895087, at *3–4 (D.N.J. Apr. 29, 2019) (claim based on city's failure to "adequately train its police officers as to the use of force and pedestrian stops" survived motion to dismiss).

While Giddings does not identify a pattern of similar constitutional violations by untrained officers, his failure to train claim survives based on the March 24, 2021, incident. *See Johnson*, 975 F.3d at 403; *Hightower v. City of Phila.*, No. 21-4075, 2022 WL 1121418, at *7–8 (E.D. Pa. Apr. 14, 2022) (plaintiff adequately pleaded failure to train claim under single-incident theory). Because the City knew to a "moral certainty" its police officers would make vehicle stops potentially leading to physical altercations, the need to train them as to proper uses of force in these situations is "so obvious" that the City's alleged failure to do so could constitute deliberate indifference. *See Harris*, 489 U.S. at 390 n.10; (Am. Compl. ¶¶ 70, 183i–q). Giddings has plausibly alleged the City's failure to train amounted to a disregard for the obvious consequence of constitutional violations. *See Brown*, 520 U.S. at 409.

Additionally, Giddings has sufficiently demonstrated that the City's alleged training failures were closely related to and caused Burnett's alleged infringement of his Fourth Amendment rights. *See Harris*, 489 U.S. at 390–91; *Beck*, 89 F.3d at 972. For example, his allegations, which cite to reports and statistics regarding relevant misconduct by the PPD, rely in part on a 2015 Department of Justice Office of Community Oriented Policing Services report recognizing "PPD officers were

8

undertrained in all uses of force as well as in threat determination and defensive tactics." (Am. Compl. ¶ 46, Ex. B); *see also Smith v. Jaskel*, No. 21-1410, 2021 WL 7707753, at *4 (E.D. Pa. Dec. 10, 2021) (plaintiff sufficiently pleaded failure to train by relying on government reports, including the 2015 DOJ Report).

With the City's allegedly defective training on uses of force in vehicle stops—including de-escalation training—it was highly predictable that incidents like the altercation between Giddings and Burnett could occur. *See Brown*, 520 U.S. at 409–10; *e.g.*, *Thomas*, 749 F.3d at 225–26 (failure to train claim targeting a lack of conflict de-escalation training survived summary judgment because failure resembled "failure to equip law enforcement officers with specific tools to handle recurring situations" (internal quotation marks omitted)). Giddings has plausibly alleged the City failed to take "protective measures" against Burnett's alleged use of excessive force against him by providing "more or different training." *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276–77 (3d Cir. 2000); *A.M. ex rel J.M.K. v. Luzerne Cnty. Juv. Detention Ctr.*, 372 F.3d 572, 582–83 (3d Cir. 2004).

2

Giddings has also plausibly asserted the City's failure to discipline officers amounted to deliberate indifference. *See Harris*, 489 U.S. at 387–89. His allegations indicate the City may have made deliberate choices to follow courses of action with respect to its disciplinary system in disregard of the obvious consequence that individuals' constitutional rights would be violated, such as when Burnett allegedly used excessive force against Giddings and unlawfully seized and searched his phone. *See Brown*, 520 U.S. at 410; *Pembaur*, 475 U.S. at 483; (Am. Compl. ¶¶ 11, 42, 183a-h);

9

*e.g.*, *White v. City of Trenton*, No. 06-5177, 2009 WL 1442765, at *6 (D.N.J. May 20, 2009) (failure to discipline claim based on ineffective handling of excessive force complaints withstood summary judgment).  For instance, Giddings discusses the Collaborative Review and Reform of the PPD Police Board of Inquiry, a PPD and Police Advisory Commission report covering conduct between 2015 and 2020 that found the PPD's disciplinary system had "longstanding and deeply entrenched problems."  (Am. Compl. Ex. E 42.)

      Giddings adequately alleges the need for a better disciplinary process was "so obvious" given the "predictability" that officers who only sporadically and inconsistently, if at all, face discipline for their misconduct will be more likely to commit constitutional violations.  *See Johnson*, 975 F.3d at 403; *Brown*, 520 U.S. at 409; *see also Estate of Roman*, 914 F.3d at 800–01 (plaintiff met pleading burden by alleging failure to discipline based on inadequate investigatory process, lack of accountability and culture whereby officers "knew there would be no professional consequences" for their actions).

      Moreover, Giddings has pleaded sufficient facts to show the City's alleged disciplinary shortcomings were closely related to and caused Burnett's alleged constitutional violations.  *See Harris*, 489 U.S. at 390–91.  For example, the PPD Police Board of Inquiry report highlighted instances when officers received non-disciplinary training or counseling after engaging in "serious misconduct" during vehicle stops and for threatening to confiscate a cell phone an individual was using to record an arrest.  (Am. Compl. Ex. E 11–12 (because "training and counseling is not discipline," officers faced "no consequences" for their misconduct and "sometimes went on to commit

additional misconduct").)  But it is "not enough that an investigative process" is in place; it must "be real" and "have some teeth." *Beck*, 89 F.3d at 974; *see also Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) ("continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future").

Giddings has for now adequately alleged the City's "procedures are inadequate to protect civilians from police misuse of force" such as what he alleges took place during the March 24, 2021, vehicle stop.  *Beck*, 89 F.3d at 974.

An appropriate Order follows.


BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

11